# EXHIBIT D



COMMONWEALTH OF MASSACHUSETTS
BRISTOL SUPERIOR COURT-TAUNTON

CASE NO.: 2273CV00152A

NATALIE ANDERSEN; Plaintiff

v.

TODISCO SERVICES INC.;
PASQUALE TODISCO III;
MATTHEW MAZZARELLA;
MAPFRE INSURANCE COMPANY;
JITEN MANAGEMENT;
Defendants.

BRISTOL. SS SUPERIOR COURT
FILED

FEB 22 2022

MARC J SANTOS, ESQ.
CLERK/MAGISTRATE

## COMPLAINT AND DEMAND FOR JURY

### I. INTRODUCTION

1. I, the plaintiff in the above captioned case, hereby submit this complaint for claims of negligence, unfair & deceptive practices, violations of the Massachusetts law governing towing/towing operations, emotional damages and other wrongs, all of which have caused the plaintiff injury and damages. These claims are made against the Defendants pursuant to Massachusetts General Laws, Chapter 93A ("93A"), as a result of the unfair and deceptive practices by Todisco Services Inc. (hereinafter "Todisco"). The plaintiff demands compensation for damages including double or treble damages for violations under 93A.

### II. PARTIES

2. The plaintiff is an individual with an address of 679 Washington Street, 8-206, Attleboro, MA 02703 in Massachusetts.
3. The defendant, Todisco Services, Inc., is a Domestic Profit Corporation with a principal place of business at 171 Boston Street, Salem, MA 01970. Its registered agent in Massachusetts is Pasquale Todisco III, at 171 Boston Street, Salem, MA 01970.
4. The defendant, Pasquale Todisco, III, is an individual who is located is 171 Boston Street, Salem, MA 01970. He is the owner of Todisco Services Inc.
5. The defendant, Matthew Mazzarella, is an employee of Todisco, located at 171 Boston Street, Salem, MA 01970.
6. The defendant, MAPFRE Insurance Company ("MAPFRE"), is a Massachusetts domestic corporation, organized under the laws of the Commonwealth of Massachusetts, with its principal office located at 211 Main Street, Webster, MA. 01570. MAPFRE also does business as Commerce Insurance company.
7. NB: MAPFRE acted on behalf of or in concert with and/or was used by Todisco to provide a denial of coverage letter to the plaintiff and has refused to engage in fair settlement practices in violation of Section 176D and has aided/abetted or facilitated the unfair/deceptive acts and practices of Todisco.
8. The defendant, JITEN Management ("Jiten"), is a Massachusetts domestic corporation, organized under the laws of the Commonwealth of Massachusetts, with its principal office located at 495 Westgate Drive, Brockton, MA 02301.
9. NB: Jiten is the principal under which Todisco acted as an agent when Todisco committed negligence, fraud and the unfair/deceptive acts and practices outlined in this complaint. As principal, Jiten is responsible for the acts of its agent Todisco under the principal-agent theory of liability.

### III: FACTS

10. Todisco is a tow truck company that operates in the state of Massachusetts. According to the Todisco company website, it has been in operation since 2000. Todisco's corporate headquarters is located at 171 Boston Street, Salem, MA 01970. Todisco also uses other office locations (such as 94 Condor Street, East

1

Boston, MA 02128) where it also stores towed vehicles and processes retrieval by consumers of their towed vehicles.
11. On 2-22-19, Todisco Services Inc. ("Todisco") towed my vehicle from a hotel in Boston, using a dolly tow truck (which was wrong to do). When I went to retrieve my vehicle from Todisco, I discovered damage to my vehicle due to the towing. Although the defendants promised to fix my vehicle, they've not done so to this day, while engaging in extensive dilatory and unfair/deceptive acts including but not limited to making false statements / misrepresentations to avoid paying the claim as well as sending my claim to an insurance company that Todisco didn't have a policy with, to cover such damage claims. I sent Todisco more than one 93A demand letter (with repair shop estimate included) but Todisco either failed to provide a reasonable offer of settlement and/or reneged on or withdrew from settlement discussions in bad faith, without providing any payment for damages. Todisco has a pattern of said unfair / deceptive acts with others.
12. NB: As will be further explained later in this document, Todisco has engaged in a predatory fraudulent scheme to deny consumers payment for damage to their vehicles caused by Todisco. On information and belief, this constitutes a pattern and practice, forming part of a racket by Todisco designed to defraud and scam the public via these unfair and deceptive practices.

## IV. COUNTS/CLAIMS

### COUNT 1 - NEGLIGENCE CLAIM

13. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
14. Vehicle damage that results from towing falls under the personal injury claims umbrella. Personal injury claims operate under negligence law, which is based on the fact that improper, or negligent towing practices caused property damage.
15. At all relevant times including on February 22, 2019, Todisco was the owner of the tow truck being operated by a Todisco Tow Truck driver named "Billy" who was/is an employee of Todisco.
16. Todisco's vehicle was operated in an unsafe or uncareful or negligent manner when it damaged my vehicle including but not limited to the rear-end bumper and muffler area of my vehicle. After the damage was discovered at Todisco's tow/storage vehicle lot in Roxbury, a Todisco's employee took pictures of the damage and agreed to process a claims form for damages to my vehicle along with the pictures of the damage attached to the claims form.
17. Todisco owns the tow trucks that it operates, and the tow truck used to tow my vehicle on February 22, 2019 is registered to Todisco as the owner.
18. Todisco is responsible for the acts of Todisco's tow truck drivers as employees of Todisco. NB: An employer is liable for the negligent acts of its employee, as a matter of law.
19. Todisco is required by Massachusetts law to carry insurance for this very purpose i.e. to cover claims for damage to vehicle caused by tow companies during a tow or while stored at the tow company lot.
20. NB: Most states[1], including Massachusetts[2], require that tow companies are liable for damage to a consumer's vehicle if that vehicle is damaged while being towed or while being stored by the tow company. This includes unintentional damage where the vehicle was damage simply as part of the act or process of towing. This requirement imposes a duty of care on tow companies.
21. A tow-truck driver has to take all reasonable precautions to prevent a consumer's vehicle from being damaged and to prevent anything being lost from it.
22. A towing company, including the driver, owes a duty to provide their services without damage or injury.

---

[1] NB: See California (V C Section 22651.07): "*Generally the owner of a vehicle may recover for any damage to the vehicle resulting from any intentional or negligent act of a person causing the removal of, or removing, the vehicle.*" See also Texas (Texas Transportation Code - Section 684.084): "(a) A towing company or parking facility owner who violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for: (1) damages arising from the removal or storage of the vehicle".

[2] According to M.G.L. c. 159B, §6B, "Nothing contained in this section shall in any way affect the liability of said motor vehicle storage facilities".

23. Todisco owed a duty of care to me to ensure that the vehicle owned by Todisco and operated by Todisco employees was being operated in a safe and careful manner and without damage to my vehicle.
24. The towing company and/or driver breached this responsibility to safely, without damage, tow my car to the lot destination. The act of breaching this duty directly resulted in the tow company damaging my vehicle. My car was damaged as a direct result of Todisco's negligence/negligent acts.
25. I can provide witness corroboration that Todisco caused the damage to my vehicle and that there was no damage to my vehicle prior to the towing by Todisco.
26. Moreover, several forms of car damage are common in terms of tow-related damage and my vehicle damage is consistent with tow-related damage. The most common type of tow-related damage that occur in improper towing practices is bumper damage and such damage done via dents, scratches, or cracks, implies negligent towing practices.
27. Further proof that Todisco caused the damage to my car can be found in the fact that Todisco is required (either by company policy or by law) to take photo of the vehicle before towing a vehicle. There is additional proof that Todisco caused the damage to my vehicle as follows:
28. I have asked Todisco to produce that photo, but Todisco has refused to do so, indicating not only that 1) the photos show proof that there was no damage to my vehicle bumper prior to being towed but also that Todisco must have caused the damage, and 2) also that Todisco has acted in bad faith in refusing to show me the photo knowing that it would prove its liability for the damage[3].
29. Moreover, photos of my entire vehicle show that there was no prior damage to my vehicle neither to the bumper area or the muffler area.
30. [NB: I also took photos of my vehicle recently which show that there is no other prior damage to my vehicle].
31. Since the photos taken by me of my vehicle prior to, as well as after, the date of February 22, 2019 show no prior damage to my vehicle, then by logical proof there can exist no other damage to my vehicle other than that which was caused by Todisco on February 22, 2019. If there was prior damage to my vehicle, then why would recent photos of my vehicle show no such prior damage. This 100% proves that there was no prior damage to my vehicle and that Todisco's claim that there was prior damage is a flat-out lie. It also shows that Todisco's claim that it has photos showing prior damage to my vehicle is also 100% false which demonstrates misrepresentation and deception by Todisco.
32. Todisco and its tow truck driver did breach said duty of care by allowing its vehicle to be operated in a negligent and careless manner.
33. As a direct and proximate result of the negligence of Todisco, its employees, agents and for those whose actions it is responsible for, I have been caused to suffer, and continue to suffer harm and damages including but not limited to, property damage to multiple areas of my vehicle requiring extensive body work repair and painting, and resulting in expensive repairs in the thousands of dollars.
34. Also, as a consequence, not only have I been unable to fully enjoy my vehicle, but I have also been unable to even consider trading-in or selling my vehicle. [NB: I have not fixed the damage to vehicle (caused by Todisco) on my own in order to preserve evidence of the damage should it be necessary for further investigation]. My vehicle has suffered diminution of value from said damages, which again is palpable when dealing with vehicles in good condition. These losses are continuing in nature, and I will continue to suffer from said losses into the future.
35. I therefore am entitled to and demand full compensation for damages against Todisco, in the amount to be determined at trial, including interest, costs and attorneys' fees.
36. Todisco engaged in negligence as it relates to my vehicle and have caused property damage to my vehicle.
37. Todisco has not exercised reasonable care in the process of towing and/or storing my vehicle.
38. The tow-truck driver has a duty to take all reasonable precautions to prevent my vehicle from being damaged.

---

[3] NB: Moreover, if there was damage prior to towing, there should be a tow ticket that shows any damage before hookup. But there is no such tow ticket and no such photo.

3

39. On information and belief, Todisco also used an incorrect towing procedure to tow my vehicle. Even assuming arguendo, that Todisco used a correct towing procedure in general, it still was negligent in the execution of that procedure, causing damage to my vehicle, for which it is responsible.
40. The undeniable bottom line fact is that, in towing my vehicle, Todisco damaged my vehicle. At a minimum, Todisco was not careful in its handling of my vehicle in or while towing it.
41. My vehicle was not damaged prior to Todisco's towing of it. It has not been damaged since Todisco towed my vehicle on 2-22-19. The only damage to my vehicle, that still is present to this day, is from when Todisco towed my vehicle and damaged it on 2-22-19.
42. As mentioned before, I can also provide witness corroboration to the fact that Todisco caused the damage to my vehicle.
43. Similarly, Matthew Mazzarella, an employee and operations manager of Todisco, admitted that Todisco caused damage to my vehicle.[4]
44. NB: The most common damage that can come from a tow truck to a car is damage to a car's bumper. For example, a tow truck can cause damage to a car's bumper if its hook was not properly positioned to pick up the car.
45. In my case, it is very clear from the nature of the damage to my rear bumper that it was caused by tow truck equipment (i.e., there is a deep gash that cut out a small chunk of the rear bumper, which is consistent with damage caused by a tow truck). The same applies to the damage to my muffler/muffler area. Todisco is thus liable for these damages.
46. At one point in the communications with Mr. Mazzarella, Todisco indicated that it could fix my vehicle in their own garage or repair shop. However, Todisco did not specify what it would repair and did not specify the extent of the repairs that they would commit to doing (i.e. whether it would include a partial repair, a complete repair or a replacement of my rear bumper and muffler damage, etc.). Todisco's offer to "repair" my vehicle damage was vague and general. Moreover, on or about 2-11-20, after some discussion had already taken place between me and him by email since December 2019, surprisingly and suddenly, Mr. Mazzarella made an issue about prior damage[5]. But he did not specify the exact nature of the prior damage, where exactly it was located (i.e. left, right center, etc.), and he did not specify what Todisco would repair if it thought there to be prior damage. Todisco refused to show me the purported photos that it said it had. I thus had no idea what exactly would be repaired by Todisco. I thus had concerns about the honesty and integrity of Todisco and could not trust that they would effectuate a proper and diligent repair of my vehicle nor could I trust that Todisco would not inflict damage to my vehicle (intentionally) in order to justify its fabrication of "prior damage" of which there was none.
47. NB: I asked Todisco for an estimate of what it would cost to repair the damage to my vehicle, but Todisco refused[6] to give me an estimate or any indication of what would be repaired and what would be involved and what it would cost.

---

[4] On February 11, 2020 at 12.28pm, Mr. Mazzarella stated: *"You are also correct about damages if we cause damage we want to make sure it is taken care of any way possible because we do care about our customers vehicle regardless of why they were towed. Please provide us with an estimate for repair so we can move forward."*

[5] NB: Todisco has no evidence that my vehicle was damaged prior to Todisco's towing of my vehicle. In communicating with Matthew Mazzarella, he eventually later claimed that he had photos showing prior damage to my vehicle, but this is a false statement. I asked him to show me these purported photos of prior damage, but he refused. Evidently, he refused to show the photos of prior damage because he does not have any such photos showing prior damage to my vehicle. When asked why he will not show me these purported photos, he stated that Todisco has a corporate policy that prevents him from showing me these purported photos. This again was a false statement. Mr. Mazzarella sent me photos of other vehicles of other owners being towed (in order to show that a Dolly truck is better than a Flatbed truck for towing vehicles such as mine) but then refused to send me photos of my own vehicle. This is an unfair and deceptive act. Evidently, Mr. Mazzarella/Todisco does not have any photos that shows prior damage to my vehicle bumper or muffler. This is an unmitigated lie. Mr. Mazzarella/Todisco lied for a corrupt and malicious purpose and intent, which was to persuade me to accept lesser repairs to my vehicle or to frustrate and delay payment for repairs to my vehicle.

[6] On February 10, 2020 at 11.08am, Mr. Mazzarella stated in an email: *"I do not know the fair cost of repair. I did not ask my shop for an estimate seeing that you did not want our body shop to repair."*

48. I thus requested[7] instead that my vehicle be repaired at an independent repair shop, which under Massachusetts law, I had the right to do.
49. Todisco then gave me the impression that if and when I provided an estimate, it would then take care of paying for the damage to my vehicle.
50. After spending time to search for and bring my vehicle to a repair shop, I then provided to Todisco not one but two estimates from two different independent repair shops. As mentioned before, I resubmitted only one estimate to Todisco in order to simplify the matter.
51. I also added an estimate of the cost for rental car to be used by me while the vehicle is being repaired.
52. Yet after providing the estimate, Todisco still refused to pay for the repairs. The details of this and other points are further explained below later in this document.
53. Thus, I suffered a financial loss and Todisco is legally responsible for my damages.
54. I suffered harm because of Todisco's negligence. Todisco's failure to exercise care caused me damages, and as a direct and proximate result of the negligence of Todisco, I suffered injury.
55. As a result, I have thus incurred costs and financial loss.
56. As registered owner of the subject vehicle, the defendant, Todisco Services, Inc., is liable under M.G.L.c. 231, s. 85A, for the negligent actions of the operator of its vehicle.
57. As a direct and proximate result of defendant Todisco Services, Inc.'s negligence, as committed through its own negligence and the negligent acts of its agent and employee, the plaintiff suffered damages.
58. NB: There is no other cause of the damage to the rear bumper and muffler area of my vehicle that has or can be identified by Todisco, other than by Todisco/Todisco's tow equipment on 2-22-19. The towing by Todisco is the only cause of this damage that has been identified and that has even been acknowledged previously by Todisco and for which there is proof.

### COUNT 2 - VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A - UNFAIR AND DECEPTIVE PRACTICES

59. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
60. Todisco is engaged in trade and commerce as defined by Massachusetts General Laws, Chapter 93A.
61. The foregoing actions and inactions of Todisco constitutes unfair and deceptive acts and practices as defined by, and in violation of Massachusetts General Laws, Chapter 93A.

#### A. Breach of Duty of Care and Duty of Good Faith/Fair Dealing

62. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
63. By entering into the towing business and by obtaining a license to be as a tow operator by the state, Todisco undertook a duty of care to protect my vehicle from damage during towing and during storage.
64. Todisco also owed to me a duty of good faith and fair dealing and thereby were obligated to consider my welfare, refrain from acting for purely selfish motives or for private gain and to desist from destroying or injuring my rights.
65. By making false and misleading representations to me, Todisco breached its duty of good faith and fair dealing to me.
66. Todisco failed to deal with me honestly, fairly, and in good faith.
67. Todisco owed me a duty to not mislead me or to make false statements to me. Todisco did mislead me and make false statements to me thereby breaching its duty to me. Todisco has acted in bad faith.
68. Todisco owed me a duty to settle this matter in good faith. Todisco refused to settle this matter in good faith thereby breaching its duty to me. Todisco has acted in bad faith.
69. Todisco had a legal obligation to maintain the security and safety of my vehicle upon towing it.

---

[7] On February 10, 2020, at 4:43 PM, I stated in email: *"Hi Matthew, Actually, I'd like to have it fixed independently. Furthermore, I am currently out of state. Do you need me to provide a damage estimate? -Natalie"*.

5

70. Todisco owed me a duty to promptly fix the damage to my vehicle. Todisco refused to promptly fix my vehicle thereby breaching its duty to me. Todisco, by so doing, has also unjustly enriched itself at my expense and to my harm.
71. Through its actions and inactions, Todisco has breached its duty of care, good faith and fair dealing to me, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm my rights and interests. As a result, I suffered damages.

### B. Undue & Unnecessary Delay by Todisco

72. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
73. Todisco engaged in actions that have resulted in the unnecessary delay of the repair of the damage to my vehicle in order to save money or to avoid payment for repairs to my vehicle for damage that it caused. This is an unfair and deceptive trade practice.
74. Todisco had knowledge of the damage to my vehicle since February 22, 2019 and that Todisco was responsible for this damage or at least that I had claimed that Todisco was responsible for said damage.
75. What is the explanation for why Todisco did not act on my damage claims form submitted on 2-22-19? Why did Todisco not submit the damage claim to their insurance company from 2-22-19? Why was there no follow-up with me after I submitted the claims form to Todisco on 2-22-19?
76. Clearly, Todisco's acts have been designed to avoid assuming liability for this damage.
77. Notwithstanding the fact that Todisco's (purported) insurance company should likely reimburse Todisco for its negligence or other intentional acts in this matter, Todisco wrongly sought to transfer the risk or liability for costs to me by forcing me to go uncompensated for over a year.
78. NB: Under Massachusetts law, tow truck companies and operators are responsible to ensure that vehicles towed are not damaged and that due care is made to prevent damage and theft of and from the vehicle in their care.
79. Todisco engaged in dragging things out (i.e. in delaying tactics relating to my damage claim), in order to avoid paying costs to repair or replace the rear bumper and muffler of my vehicle, creating undue hardship, inconvenience and damages to me.
80. Despite the fact that I provided Todisco with photos, two damage repair estimates, and other information showing that I suffered damage to my vehicle by Todisco, and despite Todisco having its own photos of said damage and having receiving my claim for damages on February 22, 2019 (all of which would allow Todisco to properly investigate the claim), Todisco has refused to pay the claim for damages to my vehicle.

### C. Misrepresentation & Deception by Todisco

81. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
82. Todisco made false and misleading representations to me, which constitutes unfair and deceptive practices within the meaning of Mass. Gen. L. ch. 93A, #2 and 9.
83. Todisco engaged in intentional misrepresentation.
84. Todisco engaged in active concealment of the truth.
85. Todisco engaged in hostile, negative, uncooperative, antagonistic, and unhelpful attitude towards me.
86. Todisco engaged in lies, deception and unethical tactics and included trying to create skewed email records by twisting what was discussed.
87. Todisco engaged in deceptive, unfair or oppressive acts. Todisco engaged in misrepresentation including dishonest communication/activity and non-transparency with me.
88. Todisco refused to provide photos purportedly taken by Todisco that purportedly show prior damage to my vehicle in order to cover up its misrepresentations and unfair/deceptive acts.
89. Todisco knowingly caused me emotional distress by making false statements about prior damage to my vehicle and by delaying the resolution of my claim.
90. [NB: After consideration of legislative changes to Chapter 93A made in 1979, the SJC, in Hershenow v. Enterprise Rent-A-Car Co. of Boston Inc., 840 N.E. 2d, 526 (2006), stated these changes were "intended to permit recovery when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no 'money' or 'property'"].

91. Todisco misrepresented that it would cause its insurance company (MAPFRE Insurance/Commerce Insurance) to process my claim, thereby giving me the misleading impression that it had a policy with said insurance company that covered my claim (i.e. under a garage-liability policy) when in fact it did not.
92. Hence, Todisco intentionally misrepresented the nature of its relationship with MAPFRE/Commerce insurance in order to further frustrate, delay and ultimately get out of paying my damage claim. By doing so, Todisco engaged in deceptive conduct and violated 93A.
93. Similarly, by proposing a resolution to my claim that was misleading, disingenuous, legally unenforceable[8] and futile because it had no applicable policy with MAPFRE/Commerce, Todisco violated Chapter 93A. This proposal or course of action by Todisco was knowingly "doomed to fail", and thus was in violation of Chapter 93A.[9] See also Piers v. Wheeler and Taylor, Inc., 8 Mass. Law Reporter 410 (1998) ("Representing to a buyer of a home that the property is free of lead-contaminated paint without verifying that fact constitutes willful misconduct subjecting the seller and the seller's real estate agent to multiple damages under c.93A.").

### D. Illegal Steering by Todisco

94. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
95. It should be noted that Massachusetts law requires that a consumer can choose a repair shop of their own choice.
96. When I stated that I wanted to choose my own repair shop, Todisco tried to pressure me into using its repair shop including by twisting the record to suggest that I had denied their offer to repair my vehicle (which I had to correct several times by email). This again was deceptive conduct intended to manipulate me into not choosing my own repair shop. See Duclersaint v. Federal National Mortgage Association, 427 Mass. 809, 696 NE2d 536 (1998) ("a practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted.").
97. Similarly, Todisco's lies about prior damage, its refusal to show pictures of said purported prior damage, and later acting as if it would pay the damages once an estimate was provided but then ultimately switched to begin insurance processing after a year of sitting on my claim and then submitting my claim to an insurance company that did not cover my claim, all were done to pressure me to go without payment for my damages and/or to accept a lesser value for the damage to my vehicle and/or to illegally steer me to use their repair shop. Todisco signaled to me that by not going with their repair shop, I made a bad decision which would result in my being penalized by not getting an opportunity to fix my vehicle at all or in my not getting (or delaying) any payment to fix the damage at all.
98. This also constituted or could be construed as bad faith extortionate tactics.

### E. Refusal to Accept Repair Estimates and Refusal to Negotiate in Good Faith with Repair Shop of My Choice

99. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
100. According to Massachusetts law, I have the following rights:
101. I have the right to have my vehicle towed to any location that I choose.
102. I do not have to get multiple appraisals. Only one will suffice.
103. Todisco is responsible for payment to restore my vehicle to pre-accident condition.
104. Todisco must negotiate in good faith with me and with the shop of my choice.
105. Todisco has refused to accept estimates from two repair shops. Todisco has refused to contact the repair shops to inquire about the estimates. If Todisco had questions about the details of the estimates, Todisco should have contacted the repair shops. Instead Todisco has concocted a wild conspiracy theory suggesting or implying that the two repair shops may have sought to defraud Todisco with estimates that are over-priced, or otherwise that the scope of the work to be repaired has been fraudulently enlarged beyond what is required to

---

[8] NB: See Jones Lang LaSalle New Eng., LLC v. 350 Waltham Associates, LLC, No. 17-cv-11784-IT, 2020 WL 419516, at *1 (D. Mass. Jan. 27, 2020).

[9] NB: See Kaur v. World Bus. Lenders, LLC, No. CV 19-11364-WGY, 2020 WL 888015, at *1 (D. Mass. Feb. 24, 2020).

effectuate complete a proper repair of the damage to my vehicle. Todisco has not investigated this matter to make any fact-based determination of such speculative suspicions. In fact, after I contacted the repair shops asking for detailed explanations for the items listed on the estimate that Todisco said it found suspect, and after I relayed this information explaining the validity and requirement for the items listed by the repair shops, and after Mr. Mazzarella stated by email that he now understood why these items were included, then all of sudden in its 93A response of 3-10-20, Todisco has unwound this position and has taken the position that the estimates are illegitimate or untruthful. This is a highly unreasonable bad faith position to take and it is done in order to avoid paying for the damage to my vehicle. Todisco has refused to resolve this matter in good faith. Todisco has manufactured a fake dispute relating to the estimates, and has done so in bad faith, knowing full well that the estimates represent legitimate repairs needed to restore my vehicle to pre-accident condition.

### F. Bad Faith Delay in Referral to Insurance Company/Bad Faith Referral to Non-Applicable Insurance Company

106. On or about 2-19-20, Todisco referred my claim to MAPFRE/Commerce Insurance company ("MAPFRE/Commerce").
107. Todisco has no garage/garage keepers' liability policy or other applicable policy with MAPFRE/Commerce that covers damage to vehicles while being towed or while being stored at a tow facility. MAPFRE/Commerce denied the claim on the grounds that Todisco has no applicable insurance policy to cover the claim.
108. Todisco has been in business since the year 2000 (for at least 20 years). Todisco knew that MAPFRE/Commerce did not cover its garage/garage keepers' liability claims. Yet Todisco still referred my claim to MAPFRE/Commerce knowing that it would be denied and knowing that it was "doomed to fail". It cannot be the first incident that a consumer has required payment for a vehicle damaged by Todisco. Todisco must have known that MAPFRE/Commerce did not cover such claims for Todisco. Todisco intentionally sent my claim to MAPFRE/Commerce, knowing it would be denied.
109. To add insult to injury, after I informed Todisco of this problem with MAPFRE/Commerce, Todisco refused to address the issue or correct the issue, which indicates that this was intentional.
110. No one from Todisco has addressed the issue of the lack of insurance or the filing of a claim with the wrong insurance by Todisco, in addition to other unfair and deceptive acts intended to undermine, delay or 'game' the claims process pertaining to compensation for damage to my vehicle. The law requires Todisco to have garage/garage-keepers liability insurance to cover damage to vehicles towed by Todisco. This matter was sat on/delayed by Todisco since February 22, 2019. All manner of delay has been interposed by Todisco to try to get out of paying for the damage to my vehicle and/or to use unfair/deceptive means intended to frustrate resolution of this claim.
111. Todisco had no intention to refer my claim for processing and coverage under a garage/garage-keepers liability insurance policy. Todisco intended to have MAPFRE/Commerce generate a denial, with the intent that this would dissuade me from further pursuing the claim.
112. Todisco evidently has handled my claim in an arbitrary, capricious, and bizarre manner, which not only indicates unfair and deceptive acts but also intent to inflict emotional distress. Todisco's marked hostility and antagonism also indicates an intent to treat me in a subpar, disrespectful, dismissive, and disparate manner.

### G. Todisco's Bad Faith 93A Response/Refusal to Settle

113. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
114. Todisco has committed an unfair claims settlement practice in violation of G.L. c. 93A, which include the following unfair practices[10]:
    a. "Refusing to pay claims without conducting a reasonable investigation based upon all information."

---

[10] NB: These are examples taken from cases that address violations of 93A by an insurance company that has engaged in unfair claim settlement practices in violation of Chapter 176D. Given the similarities of these violations and the fact that Todisco is the party who gave the impression that it would handle and administer payment of my claim, they equally apply in this context as violations of 93A as well.

8

    b. "Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."
    c. "Failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."
    d. By failing to conduct a reasonable investigation, by failing to effectuate a prompt, fair and equitable settlement in which liability had become reasonably clear, and by pursuing unreasonable arguments to defend against my reasonable demand and by refusing to settle in good faith thus forcing me to prepare to file a lawsuit, Todisco has further engaged in willful unfair and deceptive acts. See Anderson v. National Union Fire Ins. Co., SJC-12108, 2017 WL 445244, at *1 (Mass. Feb. 2, 2017) (where judge "concluded that these violations were willful and egregious, warranting an award of punitive damages under Chapter 93A, §9(3). Accordingly, he awarded the plaintiffs treble damages…").

115. Todisco refused, in bad faith, to offer or provide prompt resolution of this matter.

116. It is also an unfair claim settlement practice to make an offer in bad faith, using extortionate tactics. By attempting to illegally steer me away from using my own repair shop, by accusing me of denying Todisco's offer to repair my vehicle and by making bad faith accusations that the estimates from my repair shops were suspicious or false, and by sending my claim to an insurance company for which they had no policy to cover the claim, Todisco has not only illegally tried to steer me from my repair shops, but has also engaged in bad faith extortionate tactics. See Duclersaint v. Federal National Mortgage Association, 427 Mass. 809, 696 NE2d 536 (1998) ("a practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted.").

117. As a result of the unfair and deceptive acts or practices alleged herein, I sustained injury.

118. In consequence of Todisco' unfair and deceptive acts, I suffered and will continue to suffer damages including, but not limited to, financial and other losses, pain and suffering, and emotional distress.

119. Todisco acted intentionally, willfully, and with reckless disregard for my rights.

120. Todisco's actions, statements and omissions alleged herein were committed willfully and knowingly.

121. Moreover, in 2020, I sent more than one written communication to Todisco describing, in one form or other, the damages and unfair acts or practices described above, and the injuries suffered as well as demanding relief or that action is taken to remedy the situation by Todisco. However, Todisco not only refused to accept the settlement offer but also refused to make any reasonable offers of relief to me.

122. Instead, Todisco told me that it would all of a sudden not handle paying my claim but that it would then (for the first time after a year had passed since I filed my claim with Todisco on February 22, 2019) forward my claim to its insurance company. However, Todisco's insurance company (MAPFRE/Commerce Insurance) denied my claim on the grounds that Todisco did not have any applicable policy with it. Evidently, Todisco did not purchase/obtain the required garage/garage keepers' liability insurance from MAPFRE/Commerce, as required by the state of Massachusetts.

123. This refusal to grant relief was done in bad faith with knowledge or reason to know that these acts violated Massachusetts Laws. Similarly, this referral of my claim to MAPFRE/Commerce Insurance company for processing (when Todisco knew that it had no policy with MAPFRE) was done in bad faith, and was done to dissuade me from persisting with getting my vehicle damage repaired and to frustrate me by further delay and by a drawn out circuitous process.

124. Todisco's refusal to grant relief upon demand was done in bad faith with knowledge or reason to know that the acts and practices complained of violated Chapter 93A.

125. The acts of Todisco were willful and knowing acts in violation of G.L. c. 93A.

126. The failure of Todisco to make a reasonable offer of settlement is a willful and knowing violation of G.L. c. 93A.

127. Eventually, having exhausted all attempts to reason with and negotiate with Todisco (including escalating the matter to owner Pat Todisco who has not responded in kind), I submitted/served a demand letter for relief under G.L. c. 93A to Todisco on or about February 20, 2020, which clearly outlined the facts, my causes of action and my damages. [NB: Pursuant to Massachusetts General Laws Chapter 93A,

9

the Plaintiff made a written formal demand for relief to Todisco. But Todisco either failed to respond, and/or responded in bad-faith and/or failed to provide the relief demanded by the Plaintiff, in violation of Massachusetts General Laws Chapter 93A.]

128. Todisco nevertheless has refused to offer any reasonable settlement of this claim. In bad faith, Todisco made several false statements in its 93A response of 3-10-20, and completely fabricated certain factual assertions made by it.

129. Despite being provided with a detailed written demand for settlement, and a written demand for relief pursuant to M.G.L. c. 93A, and despite my initial claims submitted to Todisco in February 2019 and also despite then further attempts to follow-up thereafter but to no avail until December 2019, and then finally despite other numerous email correspondences with Todisco, starting in December 2019 through February 2020, still yet Todisco has refused to make a reasonable and good faith offer to settle the claim, forcing me to send a demand letter and now to initiate legal action. See Duclersaint v. Federal National Mortgage Association, 427 Mass. 809, 696 NE2d 536 (1998) ("a practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted.").

130. The ongoing unfair and deceptive acts and practices of Todisco has forced me to file suit, as Todisco refuses to tender any reasonable settlement offer.

131. I am entitled to an award of up to treble damages, in connection with this claim, pursuant to Massachusetts General Laws 93A.

132. NB: Todisco, in its 93A response of 3-10-20, has also frivolously and baselessly alleged that the first 93A demand letter that I sent "did not comply with 93A requirements" and have also used this as a basis to refuse to provide a reasonable offer of settlement. This is in complete bad faith because in the first demand letter sent on February 20, 2020, I laid out in adequate detail a clear notice of wrongs done by Todisco in violation of 93. The requirements for compliance for a 93A demand letter are liberal. There are no technical pleading standards for a 93A demand letter and the standards are considerably basic.

133. See McCarthy v. Quirk Nissan, Inc., 2009 Mass. App. Div. 159 (2009) ("...we note that it is well established that a G.L. c. 93A demand letter is sufficient if it describes the 'plaintiff's injuries in sufficient detail to permit [the defendant] reasonably to ascertain its exposure.' Richards v. Arteva Specialties S.A.R.L., 66 Mass. App. Ct. 726, 734 (2006), quoting Simas v. House of Cabinets, Inc., 53 Mass. App. Ct. 131, 140 (2001). See, e.g., York v. Sullivan, 369 Mass. 157, 162-163 (1975), quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975) (demand letter sufficient for G.L. c. 93A purposes where it gave defendant an opportunity to review the facts and law involved to see if the requested relief should be granted or denied and to enable [it] to make a reasonable tender of settlement in order to limit the recoverable damages....See, e.g., Richards, supra at 734 (demand letter sufficient where it describes the injury in enough detail to permit the defendants reasonably (even if only roughly) to ascertain their exposure")].

134. Hence, Todisco has again engaged in misrepresentation, false statements, misleading statements about the law in order to deceive me, a pro se party, and to engage in flat out deceptive conduct designed to further harm, injure me and deprive me of my rights as a consumer.

### H. Unfair & Deceptive Debt Collection by Todisco / Violation of FCDPA and Massachusetts Debt Collection Act

135. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

136. Todisco towed my vehicle to its own lot on February 22, 2019.

137. When I arrived at the lot, a Todisco employee (Don) told me that I owed a debt to Todisco of $144 and that I had to pay that debt in order to retrieve my vehicle from Todisco.

138. Because Todisco held possession of my vehicle and because I was stranded and without transportation, Todisco used the communication and situation (outlined in paragraphs 14-21 above) to force me to first pay the debt of $144 and then after I paid the debt, to sign an invoice.

139. By making these statements and representations to me, Todisco was engaged in debt collection communication with me as a consumer. Hence, under both FDCPA and MDCPA, Todisco was a debt collector and I was a debtor.

10

140. On March 10, 2020, Todisco, in its reply to my first 93A demand letter, stated that I had signed a form releasing Todisco of all liability for damage.
141. Hence, Todisco engaged in trickery, deception when it told me on February 22, 2019 that I was not signing a liability waiver. Hence, it engaged in unfair and deceptive practice associated with the collection of a debt. See Hopkins v. Liberty Mutual Insurance Co., 434 Mass. 556, 750 NE2d 943 (2001) ("a claim against an insurance company for unfair settlement practices arising from a single act can constitute an actionable violation of Chapter 176D and Chapter 93A.").
142. Todisco made no claim that liability was waived when I was communicating with Mr. Mazzarella since December 2019 through February 2020. In fact, Todisco admitted liability and asked to have my car repaired at their own shop. The only time that this fabricated argument about signing a liability waiver was made, was on 3-10-20, which was over a year after it already accepted my damage claim on 2-22-19 and which was months after Todisco had already admitted liability during email discussions with its operations manager Mr. Mazzarella, and this assertion was only made for the first time when it sent a reply to my 93A demand via its lawyer. Todisco has changed its position in bad faith at the very last minute and thus further reflects unfair and deceptive acts, in order to refuse to promptly and reasonably settle the matter. See Duclersaint v. Federal National Mortgage Association, 427 Mass. 809, 696 NE2d 536 (1998) ("a practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted.").

### I. Pattern of Racketeering Activity through Deceptive Schemes to Defraud Consumers

143. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
144. The Racketeer Influenced and Corrupt Organizations Act of 1970, commonly known as RICO, although most known to be used in criminal law context, has a component that allows anyone to file suit in civil court if they have been a victim of racketeering, which encompasses more than 30 individual illegal acts or crimes, from bribery to fraud.
145. The RICO statute contains a provision that allows for the commencement of a civil action by a private party to recover damages sustained as a result of the commission of a RICO predicate offense.
146. To bring a RICO civil suit, a plaintiff has to show that a person or business is conducting the affairs of an enterprise through a pattern of racketeering, and that they were harmed by members of an enterprise who committed a pattern of at least two illegal acts.
147. The standard of proof (the preponderance of the evidence) is low, rather than beyond a reasonable doubt.
148. Both the criminal and civil components allow the recovery of treble damages (damages in triple the amount of actual/compensatory damages) plus attorney's fees.
149. NB: In 2019, A recent complaint that shows how broadly the law can be applied to areas far outside organized crime is the RICO lawsuit filed in December against Harvey Weinstein, the Weinstein Company and its directors, and others. The complaint accuses them of helping Mr. Weinstein cover up a pattern of sexual harassment through what it calls the "Weinstein Sexual Enterprise." The class action, filed on behalf of women who dealt with Mr. Weinstein, claims that the enterprise was designed "to harass, threaten, extort and mislead both Weinstein's victims and the media to prevent, hinder and avoid the prosecution, reporting or disclosure of his sexual misconduct." In the Weinstein case, the plaintiffs claim that part of covering up the harassment involved obstruction of justice and "multiple instances of mail and wire fraud" to show the criminal pattern, and that by acting to help Mr. Weinstein, the defendants formed an enterprise alleged to be an "association in fact."
150. Several state and federal fraud statutes make it a crime to engage in a "scheme or artifice to defraud," so proving deceptive conduct can be the basis for a RICO lawsuit, including in many cases, being misled in ways involving mail or wire communications, such as emails or bank transactions, that formed a pattern of racketeering activity.
151. In my case, Pat Todisco, Matthew Mazzarella and Don, along with others, have contrived a scheme to defraud me, and the public, by engaging in a pattern of illegal conduct and racketeering activity. [NB: There

11

are Complaints of Other Consumers (on BBB and Yelp) Showing That They Were Subjected to The Same or Similar Tactics & Showing Pattern of Conduct by Todisco]. This includes activity designed to delay, frustrate, extort, and mislead consumers towed by Todisco in order to prevent, hinder and avoid payment of damages to vehicles caused by Todisco and its employees and agents.

152. Similarly, the MAPFRE/Commerce insurance company is being used by Todisco as part of its scheme to deny consumers coverage of payment for vehicle damage. Todisco sends claims to MAPFRE who then denies these claims because it has no applicable policy to cover said claims.

153. On information and belief, many consumers are not sophisticated enough to realize said scheme or to fight back with the necessary legal action in court, and thus they are defrauded and deprived of their rights by Todisco. See Schubach v. Household Finance Corporation, 375 Mass. 133 (1978) ("We reject the argument that an act or practice which is authorized by statute can never be an unfair or deceptive act or practice under Section 2 (a) of G. L. c. 93A. The circumstances of each case must be analyzed, and unfairness is to be measured not simply by determining whether particular conduct is lawful apart from G. L. c. 93A but also by analyzing the effect of the conduct on the public.").

154. Todisco's lawyers, Bennett & Belfort, have consistently represented Todisco in legal matters in court, and it is not likely that they are completely ignorant of these schemes and devices used by Todisco. The fact that Todisco's lawyers have taken to write a reply to my 93A demand which included blatant falsehoods, misleading statements, outright lies and assertions of a fabricated or twisted record of the facts, shows that Todisco's lawyers are complicit in this fraudulent enterprise of illegal and unconscionable activity.

155. Based on all of the foregoing, Todisco has engaged in a predatory fraudulent scheme to deny consumers payment for damage to their vehicles caused by Todisco. Evidently, this constitutes a pattern and practice, forming part of a racket by Todisco designed to defraud and scam the public via these unfair and deceptive practices.

### J. Intentional Common Law Fraud

156. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

157. The fine print at the bottom of the invoice was not negotiated but was unilaterally inserted at the bottom of the invoice by Todisco. NB: Incorporated into this claim are several additional arguments, such as the fact the agreement was an improper contract of adhesion since I did not have a meaningful opportunity to negotiate it. Todisco's invoice was effectively a take-it-or-leave-it offer, no negotiation of the fine print on the invoice took place, and I had no bargaining power as a person who had their vehicle involuntarily towed by Todisco. The boilerplate language of the fine print on Todisco's invoice was not negotiated nor was there any opportunity for me to consult a lawyer before signing the invoice. The disparity in bargaining power between the parties is evident. I was also under duress.

158. I had no lawyer present to review the fine print of the invoice. The invoice was only presented to me to sign after I had already paid the fee with my credit card. I had no ability to bargain or negotiate the fine print. But I was led to believe that none of the fine print would even matter because it did not apply.

159. Todisco induced me to sign the invoice by telling me that I was simply certifying that I was legally authorized to take possession of the vehicle and that I was simply signing as "payer", indicating that I had paid the fee to the pick up the vehicle.

160. Then, after more than one year had passed, for the first time, Todisco asserted that it refused to pay my claim because I had signed a contract waiving liability for damage to my vehicle (i.e. by invoking the fine print as a basis to assert that I had waived liability).

161. This meets the definition and criteria for intentional common law fraud.

162. Todisco induced me to sign an invoice by misrepresenting that it was only a receipt and that it had no intention to invoke the fine print at the bottom of the invoice, by unilaterally inserting the fine print at the bottom of the invoice, by presenting the invoice to me after I had already paid the retrieval fee and immediately before requiring that I sign it. There were no negotiations of the invoice or the fine print on the invoice. Moreover, in the circumstances, Todisco's fraudulent assurances, and deceptive acts, resulted in my signing the invoice purportedly only as a receipt.

163. As shown in case law for a common law claim of fraud, I was entitled to rely on Todisco's representation that the fine print on the invoice did not apply, especially because the fine print was unilaterally drafted and placed at the bottom of the invoice and was only shown to me immediately prior to Todisco's request that I sign it.
164. Intentional common law fraud is related to the claim of unfair & deceptive acts under 93A and as such carries a potential award for attorney fees and up to treble damages. Common law fraud can be the basis for a claim of unfair or deceptive practices under the statute, see PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975); Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979), and an intentional fraud can constitute a basis for the multiplication of damages. A finding of intentional common law fraud is an appropriate basis for a multiple damage claim of unfair or deceptive practices under G. L. c. 93A, the Consumer Protection Act.

### L. Hostile Treatment/Uncooperative Conduct as Arbitrary/Capricious Mistreatment

165. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
166. Todisco has been hostile, negative, uncooperative, antagonistic, and unhelpful in its attitude and communications towards me. Todisco also engaged in a biased/negative/hostile framing of my attempt to get my vehicle fixed. Todisco engaged in deception/deceptive acts and unfair or oppressive acts towards me and this served to deprive me of rights, promises and the duty it owed to me.
167. Todisco has behaved in a markedly hostile manner including but not limited to when it affirmatively refused to adhere to its promise and duty to repair my vehicle and when it tried to frame or characterize my attempt to pursue my damage claim as a form of subterfuge on my part, when there is no reasonable basis to assert or suspect subterfuge. In so doing, Todisco engaged in arbitrary and capricious mistreatment of me which qualifies as markedly hostile conduct.
168. In the commercial context, "markedly hostile" conduct by a commercial operator includes conduct that is profoundly contrary to the manifest financial interests of the merchant and/or its employees, is far outside of widely-accepted business norms; and/or is arbitrary on its face.
169. Todisco has been markedly hostile, uncooperative, unfair in its decision to refuse and/or delay processing of my claim for about a year after I submitted my damages claim as of February 22, 2019 and then its decision to refuse to pay the claim even after I diligently pursued the claim, and then the constant engagement thereafter in game-playing, subterfuge and moving of the "goalposts" as well as other deceptive acts, and then ultimately the refusal to settle the claim in the end (as alleged in the above paragraphs), is far outside of widely-accepted business norms and is extreme and arbitrary on its face.
170. Moreover, the unfair and deceptive practices by Todisco described herein was so arbitrary that it reflects conduct detrimental to its business/financial interests. The flagrant and blatant violation of my rights was detrimental to its financial interests, as it invited not only potential negative effects on its brand but also legal action including the attendant legal costs and exposure. Todisco's conduct is now forcing legal action to be filed and this indicates an arbitrary and detrimental approach.
171. Viewing these facts in the light most favorable to me as a prospective plaintiff, it is possible to construe Todisco's conduct, including its failure to adhere to its promise, and duty to repair my vehicle as well as its refusal to settle my damage claim, as "contrary to [its] financial interests'" and "outside of widely accepted business norms.'" See Christian v. Wal-Mart Stores, Inc., 252 F.3d (6th Cir. 2001) at 871.

### M. Summary/Conclusion of this Section

172. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
173. Todisco had a duty to treat my vehicle with care.
174. Todisco engaged in other unfair and deceptive practices that have caused me harm. These acts constitute flagrant acts of deception or fraud. Todisco as described herein has engaged in the taking advantage of me as a consumer and in the violation of my consumer rights.
175. As a result of Todisco's unfair and deceptive acts and practices, I have incurred substantial damages and costs.

13

176. Todisco's conduct was a violation of Chapter 93A.
177. Todisco's actions were willful and knowing violations of Chapter 93A and/or that its refusal to grant relief upon demand was made in bad faith.
178. Todisco frustrated, delayed and took advantage of me to further Todisco's own pecuniary interests and I suffered harm as a result.
179. I am entitled to an award damages in an amount to be determined at trial, plus interest and costs as provided by law; I am also entitled to an award of double/treble damages and attorneys' fees on my claims.
180. NB: Todisco has hired lawyers to assist them to avoid liability and payment for the damages. Todisco would rather pay lawyers more money than what they owe me to pay for the damage to my vehicle. This is an abuse of situation and is bad faith conduct. It is an abuse of corporate power and is an example of how corporations misuse their power and privilege in society to visit havoc, distress, and wrongs upon a vulnerable public.

## COUNT 3 - VIOLATIONS OF MASSACHUSETTS LAW GOVERNING TOWING/TOWING OPERATIONS

181. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
182. Todisco removed and towed my vehicle without my consent.

### A. Illegal Steering

183. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
184. According to Massachusetts Regulation 212 2.0.4, section (c) Contact with Claimant and Selection of Repair Shop, "No staff or independent, appraiser, insurer, representative of insurer, or employer of an independent appraiser shall refer the claimant to or away from any specific repair shop or require that repairs be made by a specific repair shop or individual."
185. No tow company has the legal right to insist that I should go to one body shop over another. It is against Massachusetts regulations for anyone representing a tow company to steer me to their repair shops or away from the shop of my choice.
186. A tow company also cannot tell me that they won't pay for the repairs completed in a body shop of my choosing, or that the repair costs will be higher. [NB: A tow company's motivation for doing this is to increase their profit margins, often at the expense of the quality and safety of the repair].
187. Tow companies are not permitted to refuse to pay for any necessary procedures that are critical for proper and complete repair of my vehicle, which is not in my best interest.
188. Steering is designed to direct customers to a shop that the company owns or "prefers".
189. Steering refers to the attempt to steer a consumer to a tow company's preferred body shop to have the repairs done. Steering is illegal in Massachusetts. Consumers have the right to not be intimidated or coerced into taking their vehicle somewhere just because the tow company wants them to use a particular shop. By law, consumers have the right to have their vehicle repaired by the repairer of their choice.
190. Examples of attempts by tow companies to try to steer consumers include (but are not limited to) claiming that the tow company will not pay for a rental, or doing things to drag out the time to approve coverage of the claim to repair the vehicle. This also includes tactics such as finding fault with the estimates from the repair shop that the consumer chooses. Some tow companies will say or do anything that may make a consumer think they have made the wrong decision by NOT choosing the tow company's repair shop.
191. Tow companies engage in steering for the following motives: a) to cut repair costs at the consumer's expense; b) to offer shops work with strict guidelines only to perform quantity of repairs not quality repairs; c) to control what types of parts are put on the vehicle (i.e. the cheapest available); d) to control what vendors the body shops get parts from (i.e. the cheapest available); e) to control the rental car company that is used; f) to control the amount of days it should take to repair a vehicle.
192. NB: Some tow companies own their own repair shops or have an agreement between the body shop and the tow company.

14

193. In Massachusetts, a vehicle owner has the right to choose any repair facility for the repair of their vehicle. Insurers and appraisers are also prohibited from requesting or suggesting that repairs be made in a specific repair shop.
194. In Massachusetts, therefore I have the absolute right to select a repair shop of my choice to make repairs. No insurance company or independent agent or representative or staff member of an insurance company or appraiser or anyone working for a tow company can legally refer me to or away from any specific repair shop or require that repairs be made by a specific repair shop or individual. (Reg 212 CMR 2:04(c) and MGL 26 8G).
195. As shown previously, Todisco has engaged in illegal steering by engaging in acts described in this section and elsewhere.
196. Todisco violated the law against steering in Massachusetts by insisting that I must use their repair shop. When I indicated that I preferred to use an independent shop, Todisco became angry and retaliated further by delaying payment of my damages and by frustrating the process of resolving my claim including skewing the email record to make it seem as if I was refusing, in an absolute sense, to have my vehicle repaired, when I simply indicated that I wanted my vehicle be repaired at a shop of my own choosing.

### B. Failure to Carry Required Insurance/Failure to Apply Required Insurance

197. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
198. All tow companies in Massachusetts are required to, at a minimum, carry Garage Liability/Garage Keepers Legal Liability insurance ("GKLL"). The GKLL coverage takes care of damage to customers' cars caused by negligence of the towing company and its drivers.
199. Todisco failed to carry the required GKLL insurance to cover damages caused to vehicles by its tow truck operations or otherwise failed to refer my claim to an insurance company that covered my claim under a GKLL policy. In either case, Todisco has violated the requirement of Massachusetts towing law designed to protect the public and safeguard their vehicles/property.
200. Todisco has engaged in bad faith gamesmanship in order to avoid paying for my vehicle damage and to abdicate its responsibility to protect me vehicle and to repair it in the event it has damaged it, which in this case it has done.
201. Todisco failed to file a claim with an insurance company that covered my claim. The insurance company it referred my claim to, denied my claim because Todisco did not carry the required insurance policy to cover my claim. This is not only bad faith but a violation of Massachusetts Tow Company laws. It could also constitute fraud on me (as the consumer), if not also insurance fraud. NB: To the extent that Todisco may have committed insurance fraud, this could implicate a criminal violation by Todisco.
202. The Massachusetts Department of Public Utilities monitors tow companies for failure to adhere to maximum rates and charges, failure to file proof of insurance and failure to file an annual financial form.
203. According to the regulations promulgated by Massachusetts Department of Transportation (MassDOT) for Towing and Related Services, the following shall be adhered to by towing companies:
    a. Tow companies shall maintain the following minimum levels of insurance:
        i. $750,000 combined single limit bodily injury and property damage.
        ii. $100,000 Garage Keeper's liability.
        iii. Worker's Compensation insurance.
        iv. $1,000,000 General Liability insurance.
    b. Proof of insurance shall be in the form of a certificate of insurance. Policy expiration or cancellation shall constitute immediate grounds for a tow company to have its license to operate as a tow-truck operator revoked.
    c. The tow company shall provide adequate security of vehicles and property at the place of storage. A fenced and lighted area shall be provided, with indoor storage available. The tow company is solely responsible for the reasonable care, custody, and control of any property contained in towed or stored vehicles. NB: Consequently, a tow company cannot unilaterally shift liability for damage to a vehicle caused by the tow company or the damage or theft caused

to vehicle while in the custody and care of the tow company, by requiring a customer to sign a waiver of said liability. It is a MassDot/state-mandated requirement that tow companies carry the risk of liability for any damage it causes to a vehicle while the vehicle is in the custody and care of the tow company. Therefore, this works as an estoppel against any claim by Todisco that I signed away my right to pursue a claim of damage to my vehicle while it was in the care and custody of Todisco.
   d. The primary storage facility shall normally be at the same location as the business address.
   e. Any current tow company's failure to satisfy any requirement(s) shall constitute a violation of MassDot requirements and is grounds for its immediate removal from the list of tow companies that the state will do business with.
204. According to the regulations promulgated by Massachusetts Department of Transportation (MassDOT) for Towing and Related Services, a major violation (requiring suspension or termination) includes lapse of required insurance, causing unnecessary damage to vehicle, violation by driver while on duty, and charging more than regulated rates.
205. Todisco has failed to carry the required insurance and/or caused its insurance to lapse or has intentionally misdirected me to an insurance company that does not cover the required garage liability that applies to my claim. This is a major violation of MassDOT regulations.

**C. Failure to Comply with Massachusetts Towing Regulations Pertaining to Charging of Costs to the Consumer for Trespass Tows and The Proper Recording of Time on Tow Slips.**

206. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
207. Massachusetts regulations (220 CMR 272.00: M.G.L. c. 159B, § 6B; c. 266, § 120D), in section (6) states:
   To apply a fuel surcharge, the towing slip shall record the following: (a) each applicable rate and charge relating to Fuel-burning Operations of the Service Vehicles and a sum total; (b) the amount of the authorized Fuel Surcharge Factor; and (c) the amount of the applicable surcharge (the product of multiplying the sum total from 220 CMR 272.05(6)(a) by 220 CMR 272.05(6)(b)).
208. Hence, the calculation of the fuel surcharge involves multiplying the authorized Fuel Surcharge Factor by the *applicable rate and charge relating to Fuel-burning Operations of the Service Vehicles and a sum total.*
209. On the tow slip provided by Todisco, Todisco records the following:

| Description | Details | Quantity | Price | Total |
|---|---|---|---|---|
| Fuel Surcharge | | 1 | 1.40% | $1.51 |

210. Also, recorded elsewhere on the tow slip is the tow truck odometer readings as follows:
   Truck Start Odometer:   50708.00
   Truck End Odometer:    50710.00
211. This means that the tow truck only traveled 2 miles total round trip.
212. Based on the above, Todisco failed to record each applicable rate and charge relating to Fuel-burning Operations of the Service Vehicles and a sum total. Todisco also failed to multiply the authorized Fuel Surcharge Factor by the applicable rate and charge relating to Fuel-burning Operations of the Service Vehicles and a sum total. Todisco did not comply with the rate to be charged for fuel.
213. Also, a violation occurs when the tow operator uses a calendar clock rather than a 24-hour clock which is required by M.G.L. c. 159B, § 6B.
214. Todisco did not use a 24hr clock on the tow slip and thus violated M.G.L. c. 159B, § 6B.

## COUNT 4 - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

215. I hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.
216. Todisco owed a duty of care to me under the circumstances existing.
217. Todisco breached that duty of care through its negligent conduct.
218. Todisco has caused or created emotional distress for me. I suffered emotional distress and harm as a result of Todisco's negligence.

219. Todisco knowingly caused me emotional distress by making false statements about prior damage to my vehicle and by delaying the resolution of my claim.
220. Todisco further created emotional distress by sending my claim to an insurance company that it did have coverage with, resulting in the insurance company contacting me to inform me that it denied my claim. This left me with the impression that I would not get any relief whatsoever unless I filed a lawsuit.
221. [NB: After consideration of legislative changes to Chapter 93A made in 1979, the SJC in Hershenow stated these changes were "intended to permit recovery when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no 'money' or 'property'].
222. Todisco intentionally inflicted emotional distress on me when as a direct and proximate result of Todisco's actions and inactions, I was caused to suffer severe emotional distress as the result of which a reasonable person in my position would have suffered similar emotional distress under like circumstances.
223. I have sustained damages as a result of Todisco's intentional infliction of emotional distress on me.

## V. CONCLUSION

224. Todisco's conduct, as asserted herein, constitutes unfair and deceptive acts or practices in violation of Chapter 93A, section 2 and 9. As a result of this conduct, I have been damaged in an amount to be determined at trial, which includes without limitation loss of use, and other reasonable costs. I have also suffered emotional distress. By law, anyone violating the 93A statue is liable for up to three times the amount of damages, together with courts costs and reasonable attorney's fees.
225. I provided Todisco two 93A demand letters in 2021, long before 30 days prior to this date of the filing of this lawsuit, and Todisco has not made a reasonable offer of settlement or has reneged on making an offer of settlement, in bad faith, thus leaving the plaintiff without any relief or settlement.
226. As a result of the above-described acts, the plaintiff suffered, continue to suffer, and will in the future suffer damages in an amount to be determined by a jury at trial.
227. Plaintiff is also entitled to reasonable attorney fees pursuant to statute.

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

(1) Enter judgment in Plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief, and such other and further relief as Plaintiff may be entitled to by bringing this action.
(2) Award damages within the jurisdictional limits of this court and enhanced damages as appropriate.
(3) Award reasonable attorneys' fees and costs including service and filing fees.
(4) Grant a pro se liberal construction to this pleading.
(5) Order such other relief as this Court deems just and equitable.

Respectfully submitted by the plaintiff,

*/s/ Neblie Ans*

679 Washington Street, Suite # 8-206
Attleboro, MA 02703

Dated: February 22, 2022

17